# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 24, 2010

## STATE OF TENNESSEE v. ANGELA MILHORN

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S56,755      Robert H. Montgomery, Jr., Judge**

---

**No. E2010-00458-CCA-R3-CD - Filed October 15, 2010**

---

The defendant, Angela Milhorn, appeals the denial of her request for judicial diversion, arguing that the trial court abused its discretion by placing undue emphasis on the circumstances of her offense while ignoring positive factors in favor of diversion. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); and William A. Kennedy, Assistant Public Defender (at trial), for the appellant, Angela Milhorn.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Kent Chitwood, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On June 13, 2009, officers with the Street Crimes Unit of the Bristol Police Department executed a search warrant at the Bristol home that the defendant shared with her fiancé, James Sorah,[1] and from which Sorah had regularly been selling marijuana. The search uncovered, among other things: a total of 11.2 pounds of marijuana located

---

[1] This individual's last name is spelled "Sora" in the trial transcript, but "Sorah" in the indictment.

throughout the residence, including some in a safe that had been divided for resale into one ounce ziplock baggies; marijuana pipes; marijuana cigarettes; numerous containers of "roaches," or remnants of smoked marijuana cigarettes; two sets of scales; and almost $27,000 in cash. On August 25, 2009, the Sullivan County Grand Jury indicted both the defendant and Sorah for possession with the intent to deliver or sell ten pounds or more of marijuana, a Class D felony; possession of drug paraphernalia, a Class A misdemeanor; and maintaining a dwelling where controlled substances are used or sold, a Class D felony.

On December 10, 2009, the defendant entered a best interest Alford guilty plea to the possession of marijuana count of the indictment and standard guilty pleas to the possession of drug paraphernalia and maintaining a dwelling where drugs are sold counts of the indictment in exchange for concurrent sentences of two years for each of the felony convictions and eleven months, twenty-nine days for the misdemeanor conviction, with the manner of service left to the trial court's determination.

At the sentencing hearing, defense counsel introduced into evidence a letter that the defendant had written to the trial court in which she expressed her remorse for "the poor judgments" she had made "concerning these charges." In the letter, the defendant stated that after having spent two weeks in jail, she had returned to her job as an administrative assistant at Northeast State College, where she had remained for two months until she secured a better paying job as office manager of a car dealership. She further stated that she had continued to attend college full-time via online courses, had not had anything to do with marijuana or with anyone who used marijuana, and had no desire "to ever break the law again in any manner." The defendant concluded by expressing her fear that a felony conviction would jeopardize her current and future employment and would prevent her from receiving financial assistance at college.

Upon direct examination by the trial court, the defendant acknowledged that she knew that Sorah had been selling marijuana from the residence but insisted that she had no idea of the extent of his enterprise or the quantity of cash he had in the home. Later in her testimony, however, she said that she saw large amounts of cash in the home but had assumed it was the proceeds of the "large amounts of financial aid, student loans, and assistance for vocational rehab" that Sorah had received while he was enrolled in college from 2007 to 2009. She testified that she and Sorah did not live extravagantly, paid $750 per month for rent on their house, and drove fifteen and sixteen-year-old vehicles.

The defendant denied that she ever sold any marijuana herself and explained that she was usually at school or work during the daytime hours when Sorah, who was on disability, sold the marijuana. She admitted, however, that she was at home during some of the drug transactions and had on occasion smoked marijuana with Sorah's customers. She stated that

the dryer in the garage where a large portion of the marijuana was found was not plugged in and that there was a working dryer in the house that she used. She testified that she met the fifty-two-year-old Sorah five years earlier when she was twenty-five years old, lived with him for approximately three and a half years, and, up until her arrest, smoked marijuana with him "every day or every other day."

The defendant explained the telephone harassment charge on her presentence report, which had been dismissed after her completion of a sixteen-week anger management course, as the result of her jealousy over a friend's having dated a "boy" that the defendant had been dating. She said that she had called the friend "twice in one night," using "bad language," and a week later "was given a paper to appear in court." Since that episode, which had occurred over seven years previously, she had not seen or spoken to either her former friend or her former boyfriend.

On cross-examination, the defendant testified that she was unaware that Sorah, by his own admission to police, had been selling one to two pounds of marijuana each week and had been in the business of selling marijuana for thirty years.

Investigator Daniel Graham of the Bristol Police Department testified that he obtained a search warrant for the home after the Street Crimes Unit made three controlled buys of marijuana at the residence. He said that none of the buys were from the defendant and he had no knowledge of whether she was present during the transactions. He stated that he was able to detect the "strong odor" of both burnt and raw marijuana while still standing on the porch and that the odor of marijuana inside the residence was "overwhelming." He said the scales were lying in the open in the den; that a box with "numerous bottles of roaches" was found in the living room; that an Altoid can full of marijuana cigarettes was lying on the floor in the hallway; that another Altoid can of marijuana cigarettes was located in the living room; that a bag of marijuana was found in a dresser drawer in the den; and that drug paraphernalia, consisting of forceps, a pipe grinder, and rolling papers, were found throughout the house. In addition, officers found $12,000 in cash in a safe in the den; "12 zip lock bags inside of the safe that contained 4 bags of marijuana and a Walmart bag that contained individually wrapped bundles of marijuana"; two Walmart bags of marijuana inside a dryer in the garage; $12,000 in a toolbox in the garage; and three large bags of marijuana located in a box underneath a work bench in the garage. On cross-examination, Investigator Graham acknowledged that the search warrant did not mention the defendant's name and that it was Sorah who gave the officers the combination to the safe.

At the conclusion of the hearing, the trial court denied the defendant's request for judicial diversion and instead sentenced her to three years of supervised probation with the requirement that she complete fifty hours of community service, undergo a drug and alcohol

evaluation, and submit to regular drug screening. This appeal followed.

## ANALYSIS

The defendant argues on appeal that the trial court abused its discretion in denying her request for judicial diversion by focusing too heavily on the circumstances of her offense while giving insufficient weight to the positive factors in favor of diversion, including her stable work history, continuing college enrollment, expressions of remorse for her involvement in the crimes, and disassociation with Sorah since the time of her arrest. In addition, the defendant points out that she was not a principal actor in the criminal activity and received no monetary gain from the enterprise. The State argues that there is substantial evidence in the record to support the trial court's denial of diversion. We agree with the State.

Following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (Supp. 2009). A qualified defendant is one who is found guilty or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought, is not seeking deferral of further proceedings for a sexual offense, a violation of section 71-6-117 or section 71-6-119, or a Class A or Class B felony, and who has not been previously convicted of a felony or a Class A misdemeanor. Id. § 40-35-313(a)(1)(B)(i). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b).

The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). As such, it will not be disturbed on appeal absent an abuse of discretion. Electroplating, 990 S.W.2d at 229; Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168. To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn .Crim. App. 1992).

In determining whether to grant diversion, the trial court must consider all of the following factors: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused.

Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Id.

The trial court considered and explained its weighing of all of the above factors in its decision to deny the defendant's request for judicial diversion. The trial court first found that the defendant's amenability to correction, as well as the circumstances of the offenses, both weighed against the granting of diversion. The court based these findings, in large part, on the large amount of drugs and drug paraphernalia found in the home and the amount of time the defendant lived with Sorah, concluding that the defendant, who was not as naive as she attempted to portray herself, had been aware of the extent of Sorah's drug enterprise and had chosen to live with him to reap the benefits of having a readily available supply of marijuana for her own use, as well as someone to share in her household expenses.

The trial court also found that the defendant's criminal record and social history weighed against the granting of diversion, noting the defendant's long history of regular marijuana use and the fact that she chose to live with someone twenty-two years her senior "basically for the purpose of . . . using marijuana."

The court found that the defendant's mental and physical health was not an issue in the case and therefore weighed neither for nor against the granting of diversion.

The court found that the last two factors – the deterrence value to the defendant and to others and whether diversion would serve the interests of the public and the defendant – also weighed against the granting of diversion. In making this determination, the court focused on the fact that the defendant's offenses were not the result of a single instance of poor judgment on her part, but instead represented her continuing choice to share in and contribute to a household where marijuana was regularly sold. The trial court concluded its ruling as follows:

> And, again, in my opinion there is deterrence value to you and to others. I mean if we were talking about just a very short period of time I might look at this differently but based upon the fact that you're in college, the fact that you had been employed, the fact that -- I mean, you know, it's not just a poor choice one time, which I think primarily is what judicial diversion or deferral of judgment is all about. I mean it's a long term repeated period of bad choices. . . . And in my opinion there is deterrence value to you as well as others that, you know, you can't just contribute to a household where you know that somebody is selling and for a long period of time and there's no consequences from that so I do find that there is deterrence value and as a

-5-

result of those things I don't find that judicial diversion in this case would serve the interest of the public as well as you weighing all those things in consideration.

The record supports the findings of the trial court. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's request for judicial diversion.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE